**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated: May 9 2018**

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 17-32993 |
| | ) | |
| Terry L. Bosserman, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | |
| | ) | Judge John. P. Gustafson |

### MEMORANDUM OF DECISION AND ORDER RE: DEBTOR'S CHAPTER 13 ELIGIBILITY

This case comes before the court on the Chapter 13 Trustee's ("Trustee") Motion to Dismiss Case ("Motion"), filed on January 11, 2018. [Doc. #34]. Creditors First Federal Bank of the Midwest ("First Federal") and Skymark Refuelers, Inc. ("Skymark") also filed Objections to Debtor's Chapter 13 Plan seeking dismissal of Debtor's case. [Doc. ##31, 33]. After an initial hearing on the Motions/Objections held on February 22, 2018, the court set the matter for evidentiary hearing on April 6, 2018. [Doc. #53]. In her Motion, Trustee alleges that, because the claims filed in Debtor's case exceed the unsecured debt limits set forth in 11 U.S.C. §109(e), Debtor's case should be dismissed. In their Objections, Creditors First Federal and Skymark allege that Debtor is ineligible for Chapter 13 relief because his unsecured debts exceed §109(e)'s limit of $394,725.

On April 6, 2018, the court held an evidentiary hearing on the Motions/Objections that was attended in person by Debtor, Debtor's Counsel, Trustee, Counsel for Skymark, Counsel for First Federal, and a representative of First Federal. At the hearing, the parties presented testimony, exhibits, and other evidence in support of their respective positions.

The court has jurisdiction over Debtor's Chapter 13 case and this adversary proceeding pursuant to 28 U.S.C. §§1334, 157(a), and Local General Order 2012–7 of the United States District Court for the Northern District of Ohio. The determination of a Chapter 13 Debtor's eligibility is a core proceeding that this court may hear and determine. 28 U.S.C. §157(b)(1) and (b)(2)(A) and (O).

For the following reasons, the Trustee's Motion to Dismiss Case will be granted.

## FACTUAL BACKGROUND

Debtor Terry L. Bosserman filed for Chapter 13 bankruptcy relief on September 19, 2017. [Doc. #1]. Initially, this case was a "skeleton filing" - Debtor did not file any Schedules, the Statement of Financial Affairs, a Means Test form, or a Chapter 13 Plan. On October 18, 2017, Debtor filed his Schedules and other required documents. [Doc. #13]. Debtor's Schedules listed secured debt of $616,000.00, priority unsecured debt of $61,300.00, and nonpriority unsecured debt of $109,300.00. [*Id.*, pp. 1, 14-19]. Relevant here, Debtor's Schedule D, "Creditors Who Have Claims Secured by Property," lists First Federal as the holder of a contingent, unliquidated, and disputed claim in the amount of $440,000.00, described as: "Note and UCC filing against all inventory, Accounts, equipment and General Intangibles and an Assignment of contract-Purchase Order No. 035472 daated (sic) 07/06/2006; after acquired property, proceeds; personal guarantee." [*Id.*, p. 12, Part 1, Claim 2.1]. Column C states that all $440,000.00 is unsecured, and Debtor checked the boxes that further describe First Federal's claim as related to "An agreement you made" and a "Judgment Lien from a lawsuit." [*Id.*].[1]

On January 9, 2018, First Federal filed a Proof of Claim that, in contrast to Debtor's Schedule D, asserts an unsecured claim of $17,484,300.63 based upon "Commercial Loans, Personal Guarantees and damages." [Claim No. 5-1, p. 2]. First Federal's Proof of Claim was filed with an attached exhibit [*Id.*, Part 2] that outlines the scope of Debtor's obligations to First Federal and includes copies of promissory notes/commercial security agreements signed by Debtor

---

[1] Debtor's Schedule D lists a second claim owed First Federal pertaining to Debtor's residence that is not relevant to the issue before the court. [Doc. #13, p. 12, Part 1, Claim 2.2]

on behalf of his business [*Id.*, pp. 3-27, 52-55, 62-118], and accompanying commercial guarantees signed by Debtor in his personal capacity. [*Id.*, pp. 28-52, 56-58]. Notably, each commercial guarantee includes Debtor's signature and provides that "[t]his is a guaranty of payment and performance and not of collection…" [*Id.*, pp. 28, 31, 34, 37, 40, 43, 46, 49] or "[t]his is a guaranty of payment of the Note…." [*Id.*, p. 56]. According to the attachment to First Federal's Proof of Claim, its claim includes: 1) the amount owed by Debtor on the loans and guarantees in the amount of $4,344,110.10; 2) treble damages arising out of the state court action in the amount of $13,323,330.00; and 3) attorney fees in the amount of $120,404.97. [*Id.*, p. 1].[2]

On January 11, 2018, Trustee filed a Motion to Dismiss Case alleging that Debtor is ineligible for Chapter 13 relief because he has unsecured debt in excess of 11 U.S.C. §109(e)'s current eligibility limit. [Doc. #34, p. 1]. At the February 22, 2018 hearing on Trustee's Motion, the court set the matter for an evidentiary hearing to be held on April 6, 2018. [Doc. #53].

At the April 6, 2018 evidentiary hearing on Debtor's Chapter 13 eligibility, Trustee rested her case on the amounts shown on Debtor's Schedules and the amounts claimed by interested creditors. Creditors First Federal and Skymark presented both documentary and testimonial evidence in support of their position that Debtor owed amounts in excess of §109(e)'s limits at the time of filing. First Federal and Skymark contend that Debtor's loan obligations to First Federal were, and still are, liquidated and noncontingent within the meaning of §109(e). First Federal introduced its Proof of Claim with attachment [Ex. FF 1] and a summary of Debtor's business' commercial loan balances that show a total amount owed of $4,592,029.08.[3] [Ex. FF 2]. Skymark also introduced exhibits that outline a state court proceeding involving First Federal that led to the appointment of a receiver and the liquidation of Debtor's business. [Ex. Skymark 1-12]. All 15 exhibits offered by First Federal and Skymark were admitted without objection.

First Federal's representative, Gwen Micham, testified that she personally handled First Federal's financial relationship with Debtor and his business. Ms. Micham testified that Debtor and First Federal entered into an agreement that provided for the restructuring of the financial obligations of Debtor's business [Ex. Skymark 1, p. 20] and that said agreement underwent four

---

2/ At the evidentiary hearing, the parties seeking dismissal asserted that only the $4,344,110.10 reflected in the Proof of Claim (or the $4,592,029.08 with the two obligations omitted from the Proof of Claim) that arose from the guarantees is a liquidated and noncontingent debt for purposes of §109(e).

3/ First Federal's representative, Ms. Micham, later explained that First Federal's proof of claim failed to include two additional loans that, when added to the $4,344,110.10, lead to a total debt calculation of $4,592,029.08.

3

amendments. Relevant here, the restructuring agreement, and its four amendments by incorporation, contains stipulations to the effect that Debtor, Debtor's wife, and Debtor's business have defaulted on the promissory notes and that First Federal maintains the ability to pursue immediate payment from the borrowers and guarantors. [*Id.*, pp. 24-25, 40, 44, 48, 52]. The documents presented were all signed by Debtor. [*Id.*].

Pursuant to the fourth amendment executed on September 29, 2014 [*Id.*, p. 51], a document authenticated by Ms. Micham, Debtor consented to the appointment of a receiver for the liquidation of his business in exchange for First Federal's promise that Debtor's outstanding commercial loan obligations would be forgiven if the receiver met, with Debtor's assistance, a liquidation recovery target of $1,800,000.00.[4] [*Id.*]. The fourth amendment expressly provides that: 1) the real property of Debtor's business was excluded from the receiver's target calculation; and 2) Debtor, Debtor's wife, and Debtor's business both recognized and reaffirmed the debts outlined in all related loan documents. [*Id.*, p. 51-52].

Per Ms. Micham's testimony, the receiver's target of $1,800,000.00 set forth in the fourth amendment was not met. [Ex. Skymark 10, p. 3]. Specifically, Ms. Micham testified that First Federal has only received $1,320,715.08 from the receiver's liquidation of Debtor's business and that Debtor has not made any additional payments on his outstanding obligations. [Ex. FF 2]. Consequently, Debtor remained liable on the commercial guarantees as of the date of his petition, in the amount of $4,592,029.08. This amount was reflected on First Federal's commercial loan summary [Ex. FF 2] and promissory notes. [Ex. FF 1, pp. 6, 9, 12, 17, 20, 23, 26, 29, 55, 57]. Ms. Micham further testified that the discrepancy between the commercial loan summary ($4,592,029.08) [Ex. FF 2] and First Federal's Proof of Claim attachment ($4,331,565.36) [Ex. FF 1, p. 4] resulted from First Federal originally failing to include two additional debts owed by Debtor and his business in their proof of claim.

Debtor's counsel argued that Debtor has satisfied the terms of First Federal's offer of debt forgiveness via his assignment of a life insurance policy to First Federal [Ex. Skymark 1, p. 234-35] and thus his debts do not violate §109(e)'s threshold limits. Debtor's counsel further argued that: 1) the debts owed First Federal are contingent and unliquidated given the ongoing state court

---

4/ Specifically, the fourth amendment provides: "At such time as Bank receives repayment of $1.8 million from BAE [Debtor's business] accounts and assets (excluding real property occupied by BAE), the business debt guarantees of Bosserman and G. Bosserman will be forgiven." [Ex. Skymark 1, p. 51].

4

action; 2) First Federal's claim misstates the amounts owed; and 3) Debtor's signed commercial guarantees should be regarded as secured by Debtor's personal and real property.  Debtor did not provide any documentary or testimonial evidence in support of his position aside from reference to the documents provided by First Federal/Skymark and Debtor's counsel's cross-examination of Ms. Micham.

## LAW AND ANALYSIS

11 U.S.C. §109(e) governs an individual's eligibility to file a case under Chapter 13 of the Bankruptcy Code.   It provides:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $394,725 and noncontingent, liquidated, secured debts of less than $1,184,200, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $394,725 and noncontingent, liquidated, secured debts of less than $1,184,200 may be a debtor under chapter 13 of this title.

11 U.S.C. §109(e).[5]

The Sixth Circuit Court of Appeal's decision in *Comprehensive Accounting Corporation v. Pearson* (*In re Pearson*), 773 F.2d 751, 756 (6th Cir. 1985), states that a court tasked with determining an individual's Chapter 13 eligibility "…should rely primarily upon the debtor's schedules checking only to see if the schedules were made in good faith…." *See also*, *Scovis v. Henrichsen* (*In re Scovis*), 249 F.3d 975, 982 (9th Cir. 2001); *In re Perkins*, 2009 WL 2983034, 2009 Bankr. LEXIS 2885 (Bankr. N.D. Ohio Sept. 14 2009); *In re Odette*, 347 B.R. 60, 62-63 (Bankr. E.D. Mich. 2006).  The *Pearson* Panel further held that "[t]he threshold eligibility determination for Chapter 13 is in many respects like the threshold subject matter jurisdiction determination in diversity cases…" and that an "extensive inquiry" would be inconsistent with the language of §109(e) and its underlying congressional intent. 773 F.2d at 756-57.[6]

---

5/  The dollar amounts shown reflect the current adjustment as set forth by the Judicial Conference of the United States. *See*, 11 U.S.C. §104.

6/  The Sixth Circuit Bankruptcy Appellate Panel recently adopted the *Pearson* eligibility framework in the context of Chapter 12 bankruptcy. *See*, *In re Perkins*, 581 B.R. 822, 833 (6th Cir. BAP 2018)("*Pearson* cited limited debtor resources and short deadlines for Chapter 13 filings as important policy considerations requiring efficient Chapter 13 eligibility determinations. These policy concerns are as relevant for Chapter 12 debtors.").

17-32993-jpg    Doc 103    FILED 05/09/18    ENTERED 05/09/18 13:49:14    Page 5 of 10

In applying *Pearson*, the *Perkins* court set forth the following framework for determining an individual's Chapter 13 eligibility:

> (1) the schedules are unquestionably the starting point of the eligibility inquiry, but may also be the ending point under certain circumstances; (2) the word "normally" used with respect to reliance on schedules implies exceptions for the proper application of a court's discretion so long as the determination focuses on determining debts "on the date of filing,"; and (3) given the need for parties in interest to know § 109(e) eligibility early in a case, the eligibility determination should not depend on the claims allowance process (based on the Sixth Circuit's quoting with approval a case that states that the court considers debts as they exist at the time of filing, "not after a hearing") and turn into separate satellite litigation that dominates and delays the Chapter 13 proceedings…. [A] court must [also] make an independent determination apart from Debtor's schedules whether debts are contingent and unliquidated.

*Perkins*, 2009 WL 2983034 at *2, 2009 Bankr. LEXIS 2885 at **4-5 (citations omitted).

Because *Pearson* warns against substituting the claims allowance process in making a determination of a debtor's eligibility, the court will focus its inquiry on Debtor's Schedules and debt obligations at the time of filing. 773 F.2d at 756; *see*, *Odette*, 347 B.R. at 62-63. Specifically, the court looks to the amount of First Federal's claim as it was originally listed on Debtor's Schedule D at the time of filing while making "an independent determination" as to whether the claim was legitimately contingent and unliquidated. *Perkins*, 2009 WL 2983034 at *2, 2009 Bankr. LEXIS 2885 at **4-5; *see*, *Pearson*, 773 F.2d at 756; *In re Smith*, 365 B.R. 770, 780-81 (Bankr. S.D. Ohio 2007).

Black's Law Dictionary (10th ed. 2014) defines "contingent" as "[p]ossible; uncertain; unpredictable" or "[d]ependent on something that might or might not happen in the future; conditional." In the bankruptcy context, "[a] liquidated debt is one that can be determined by mathematical computation" or is otherwise "readily ascertainable." *Pearson*, 773 F.2d at 754 (quotation omitted); *Smith*, 365 B.R. at 784. Notably, §109(e) does not exclude debts which are "disputed" from the debt limit calculation.

Upon review of the arguments and evidence presented by the parties at the April 6th hearing, the court finds that First Federal's claim consists of at least $440,000.00 in liquidated, noncontingent, unsecured debt. Though Debtor listed First Federal's claim as contingent and unliquidated on Schedule D [Doc. #13, p. 12, Part 1, Claim 2.1], both Skymark and First Federal presented persuasive documentary and testimonial evidence that contradicts Debtor's description

6

of the claim. First, the court notes that the language contained in the restructuring agreement, and its four amendments by incorporation, expressly states that Debtor and his business acknowledged being in default on the obligations contained in the promissory notes. [Ex. Skymark 1, pp. 24-25, 40, 44, 48, 52]. Accordingly, as of December 26, 2013, the date of the execution of the original restructuring agreement, Debtor's guarantees of payment became noncontingent, continuing obligations. *See*, *In re Winters*, 2012 WL 1067696 at *3, 2012 Bankr. LEXIS 1030 at *8 (Bankr. E.D. Tenn. March 12, 2012)(noting that a debt underlying a guarantee "is contingent unless and until the principal obligor defaults…").

Consequently, the commercial guarantees of payment [Ex. FF 1, pp. 31, 34, 37, 40, 43, 46, 49, 52, 59] and promissory notes [*Id.*, pp. 6, 9, 12, 17, 20, 23, 26, 29, 55, 57] offered by First Federal and Skymark establish that, by simply adding up the amounts stated on the notes and their payoff statements, Debtor owed (and still owes) First Federal $4,592,029.08 as of September 19, 2017, the date of his Chapter 13 filing. *See*, *Pearson*, 773 F.2d at 756. Further, First Federal's representative, Ms. Micham, credibly testified that Debtor has not met the forgiveness target laid out in the fourth amendment to the restructuring agreement [Ex. Skymark 1, p. 51]. Without deciding whether First Federal would have an allowed claim in the amount of $4,592,029.08,[7] the court finds that, at a minimum, Debtor owed First Federal at least $440,000.00 in liquidated, noncontingent, unsecured debt as of the date of his filing. *See*, *Perkins*, 2009 WL 2983034 at *2, 2009 Bankr. LEXIS 2885 at *5; *Smith*, 365 B.R. at 780-81.

The court finds First Federal's claim to be unsecured for three reasons. First, Debtor's Schedule D lists the entire $440,000.00 as an unsecured portion of First Federal's claim. [Doc. #13, p. 12, Part 1, Claim 2.1]. Second, to the extent that First Federal's claim is listed as secured by property of Debtor's business, such as inventory, equipment, and general intangibles, obligations that are secured by collateral owned by a third party are considered unsecured for purposes of §109(e). *See*, *In re Fuson*, 404 B.R. 872, 876 (Bankr. S.D. Ohio 2008)(…"the language of §506(a)(1) restricts "secured debts" referenced in §109(e) to those secured by property in which the estate has an interest."); *In re Hurtt*, 454 B.R. 733, 737 (Bankr. E.D. Ky. 2011).

Third, where a claim is listed on a schedule of secured debts, but includes an unsecured portion and collateral valued at $0.00, the claim will be regarded as unsecured pursuant to a §109(e) eligibility determination. *See*, *Fuson*, 404 B.R. at 876 (holding that a claim listed on

---

7/ Or the $4,344,110.10 listed in First Federal's proof of claim. [Claim No. 5-1, Part 2, p. 1].

17-32993-jpg    Doc 103    FILED 05/09/18    ENTERED 05/09/18 13:49:14    Page 7 of 10

Schedule D with collateral valued at $0.00 must be treated as unsecured); *Hurtt*, 454 B.R. at 737 (agreeing with *Fuson*); *In re McClaskie*, 92 B.R. 285, 287 (Bankr. S.D. Ohio 1988)("It is not properly assertable that merely placing an obligation on a schedule of secured debts makes it a fully secured obligation. Neither the Court nor the debtor is permitted to close its eyes to the obvious, as reflected by the schedules."). Additionally, "a vast majority of courts, and all circuit courts that have considered the issue, have held that the unsecured portion of undersecured debt is counted as unsecured for §109(e) eligibility purposes." *In re Ash*, 539 B.R. 807, 809 n. 1 (Bankr. E.D. Tenn. 2015)(quoting *Scovis*, 249 F.3d at 983). Accordingly, even though Debtor listed First Federal's claim on Schedule D [Doc. #13, p. 12, Part 1, Claim 2.1], the court finds the $440,000.00 to be unsecured for purposes of §109(e) because the underlying collateral was valued at $0.00.

In sum, the court finds that First Federal's claim consists of at least $440,000.00 in liquidated, noncontingent, unsecured debt. Debtor's Schedules also show that he owes $1,500.00 in liquidated, noncontingent, unsecured debt to another creditor.[8] [Doc. #13, pp. 1, 14-19]. Thus, the court finds that Debtor is ineligible for Chapter 13 relief because his unsecured debts in the amount of $441,500.00 exceed the limit of $394,725.00 set forth in 11 U.S.C. §109(e).

Alternatively, the court finds that the evidence presented raises serious questions as to whether the $440,000.00 figure listed on Debtor's Schedules was calculated in good faith. *See*, *Pearson*, 773 F.2d at 756. In *Pearson*, the panel upheld the bankruptcy court's finding that Debtors had filed their schedules in good faith even though the amounts listed were likely to change once a related arbitration proceeding concluded. *Id.* at 758. The *Pearson* panel noted that, even though the arbitration award against the debtors would probably exceed the unsecured debt eligibility threshold by around $27,000.00, there was nothing to indicate "that the debt was unsecured to that extent or that the [Debtors] would be ultimately held liable for that amount." *Id.*

Here, First Federal and Skymark presented persuasive evidence that Debtor significantly understated and misdescribed First Federal's claim on Schedule D. Unlike in *Pearson*, where the difference between the scheduled claim and the end result of the arbitration proceeding amounted to only $24,000.00, the difference here is dramatic – the evidence presented by First Federal and Skymark suggests that Debtor understated First Federal's claim by approximately $4,000,000.00. Further, Debtor did not provide any documentary or testimonial evidence in support of why he

---

8/ All of the other unsecured claims listed in Debtor's Schedule E/F are listed as unliquidated and/or contingent, or the amount is listed as "unknown" or $0 (with a reference to "notice only").

listed First Federal's claim as being $440,000.00. Given Debtor's inability or unwillingness to provide the court with any kind of evidence in support of the amount that was listed, it appears that Debtor did not make a good faith effort to accurately list and describe the First Federal obligation when he prepared his Schedules.[9]

Debtor's argument that the debt forgiveness target was met fails because the plain language of the fourth amendment establishes that forgiveness would only occur if First Federal received $1,800,000.00 *from Debtor's business' accounts and assets*. [Ex. Skymark 1, p. 51]. Consequently, Debtor's reference to the assignment of a life insurance policy is unpersuasive because said policy bears no relation to the accounts and assets of Debtor's business. Even if the court were to credit Debtor's argument and assume that the life insurance policy assignment could potentially trigger forgiveness, Debtor did not offer any concrete evidence in terms of the policy's cash surrender value or how inclusion of the policy actually meets the $1,800,000.00 target.

Moreover, Debtor's dispute with First Federal as to whether or not forgiveness was triggered would render First Federal's claim disputed, not contingent or unliquidated, because the claim relates to a sum certain debt evidenced by guarantees of payment connected to promissory notes that Debtor had defaulted on years before filing for Chapter 13 relief. *See*, *Winters*, 2012 WL 1067696 at *3, 2012 Bankr. LEXIS 1030 at *8. Accordingly, Debtor's dispute with First Federal does not remove the debt to First Federal from the court's §109(e) eligibility determination. *See*, *In re Corson*, 2004 WL 5865045 at *12, 2004 Bankr. LEXIS 2617 at *38 (Bankr. E.D. Pa. June 25, 2004) ("Although the debtor now disputes the amount claimed due by this [creditor], a disputed debt is still considered for chapter 13 eligibility purposes."); *United States v. Verdunn*, 89 F.3d 799, 802 n. 9 (11th Cir. 1996); *In re Knight*, 55 F.3d 231, 234-35 (7th Cir. 1995).

Debtor's argument that the ongoing state court action renders First Federal's claim contingent is also unavailing because the documents provided by First Federal and Skymark establish that Debtor's obligation on the commercial guarantees exists independent of the state court action and its outcome. In other words, Debtor's obligation to First Federal in the amount of at least $440,000.00 was a liquidated, noncontingent obligation existing at the time of Debtor's Chapter 13 filing as evidenced by the guarantees themselves [Ex. FF 1, pp. 31, 34, 37, 40, 43, 46,

---

9/ To the extent that Debtor argues that First Federal's claim should actually have been listed as 0.00 or unknown, the court notes that *Pearson* requires a look towards Debtor's Schedules *as they were filed*. 773 F.2d at 982. Accordingly, the court need not accept Debtor's attempts to amend or impeach the $440,000.00 listed, particularly given Debtor's lack of justification for coming up with the $440,000.00 figure in the first place.

49, 52, 59] and the restructuring agreement. [Ex. Skymark 1, p. 20-41]. Again, it should be noted that for purposes of the §109(e) determination, the court is disregarding the additional contingent, unliquidated $13.4 million at issue in the state court action.

Debtor further argues that Debtor's commercial guarantees should be regarded as secured by Debtor's real and personal property. However, the court finds this argument unconvincing because Debtor did not provide any evidence that suggests the guarantees were secured. Additionally, while the commercial security agreements contain terms that expressly provide for the attachment of collateral owned by Debtor's business [Ex. FF 1, pp. 62-118], the guarantees contain no such language and instead describe what appears to be a grant of Debtor's personal liability on debts evidenced by the promissory notes. [Ex. FF 1, pp. 31, 34, 37, 40, 43, 46, 49, 52, 59]. Thus, Debtor has not provided the court with any basis for finding the guarantees secured by Debtor's personal and real property, particularly given the fact that Debtor listed First Federal's claim as consisting of $440,000.00 in unsecured debt on Schedule D. [Doc. #13, p. 12, Part 1, Claim 2.1].

Accordingly, the court finds that Debtor is ineligible for Chapter 13 relief because his unsecured debt exceeded the limits set forth in §109(e) at the time of filing. No request for conversion to an alternative chapter of the Bankruptcy Code having been made, Debtor's case will be dismissed.

**THEREFORE**, based on all of the foregoing reasons and authorities, good cause appearing,

**IT IS ORDERED** that the Trustee's Motion to Dismiss [Doc. #34] be **GRANTED**. Debtor's case will be dismissed by separate order of the court.